## OIL AND GAS LEASE COVERING SEPARATE TRACTS WHICH PASS TO DIFFERENT PURCHASERS.

THE NORTHWESTERN OHIO NATURAL GAS CO. v. ULLERY.

· Decided, April 28, 1903—68 Ohio State, p. 259.

*Oil and Gas Lease—Covering Separate Tracts of Land—Lease Extends to Heirs of Parties—Different Persons Become Owners—Each Owner Entitled to Royalty Arising from His Tract.*

Where an oil and gas lease is made by one party to another covering two or more separate tracts of land, and is made to extend to the heirs and assigns of the parties, and different persons become the owners of such different tracts, each owner is entitled to the oil and gas produced on his tract, and to the royalty and rental arising from such tract.

Error to the Circuit Court of Wood County.

John A. Taylor was the owner of two tracts of land cornering each other, one containing forty acres and the other sixty. He executed and delivered the following written instrument:

"THIS AGREEMENT made and entered into this tenth day of June, A. D. 1886, by and between John A. Taylor, of Cass township, of the county of Hancock, and state of Ohio, of the first part, and William Duke, Jr., of Wellsville, N. Y., of the second part,

"*Witnesseth:* That the said party of the first part, for the consideration of the covenants and agreements hereinafter mentioned, has granted, demised and let unto the party of the second part, his heirs or assigns, for the purpose and exclusive right of drilling and operating for petroleum and gas, all that certain tract of land situated in Cass township, Hancock county, and state of Ohio, bounded and described as follows, to-wit: The south half of the west half of the southwest quarter section No. 2, and three-fourths (¾) of the north half of the northeast quarter, section No. three (3) Cass township, Hancock county, Ohio, containing one hundred acres, be the same more or less, together with the right of using sufficient water therefrom necessary to the operation thereof, excepting from wells now located, except by consent of first party, the right of way over on said premises, the right to lay pipes to convey oil or gas, and the right to remove any machinery or fixtures placed on said premises by the party of the second part.

"The party of the second part, his heirs or assigns, to have and to hold the said premises for and during the term of five years from the date hereof and as much longer as oil or gas is produced or found in paying quantities thereon.

"In consideration of said grant and demise, the said party of the second part agree to give or pay to the said party of the first part the full equal one-eighth part of all the petroleum produced or found on the said premises, and to deliver the same, free of expense, into tanks or pipe lines to the credit of the first party. And should gas be found in sufficient quantities to justify the party of the second part in marketing the same, the consideration in full to the party of the first part, instead of the petroleum royalty, shall be $100 per annum for the gas from each well so long as it shall be sold therefrom.

"It is further agreed that the party of the second part shall complete a well on the above described premises within nine months from the date hereof, and in case of failure to complete such well within such time, the said party of the second part agree to pay to the said party of the first part, for such delay, a yearly rental of fifty cents per acre on the premises herein leased from the time of completing such well as above specified until such well shall be completed; the said yearly rental amounting to fifty dollars, shall be deposited to the credit of the party of the first part in the First National Bank, Findlay, Ohio, or be paid direct to the said party; and a failure to complete such well, or to make such deposit or payment as above mentioned, shall render this lease null and void and to remain without effect between the parties hereto.

"Above named payment to be made by the first day of March in each year.

"Party of the second part to furnish all the gas necessary for domestic use, including not to exceed five hundred feet of one-inch pipe to convey the gas from the well to the dwelling, free of charge.

"It is understood between the parties of this agreement that all conditions between the parties hereunto shall extend to their heirs, executors and assigns.

"In witness whereof, we, the said parties of the first and second parts, hereunto set our hands and seals the day of year first above written.

| | |
|---|---|
| "JOHN A. TAYLOR, | (Seal) |
| "SOPHIA A. TAYLOR, | (Seal) |
| "WM. DUKE, JR., | (Seal)." |

This instrument was duly witnessed, acknowledged and recorded, and was afterward duly assigned to the plaintiff in error.

Afterward extensions were made by writing the follow Exhibits B and C on the back of said instrument:

"Exhibit 'B.'

"May 15, 1891.

"In consideration of the sum of $150 to me paid by The N. W. O. N. Gas Co. and further agreement to pay me the same sum on or before June 10, 1892, I consent to the extension of all the terms and conditions of the within lease for two years from June 10, 1891, or until June 10, 1893.

"John A. Taylor.

"Witness: L. C. Beatty."

"Exhibit 'C.'

"In consideration of the sum of $150 to me in hand paid by The N. W. O. N. Gas Co. and the further agreement to pay one hundred and fifty each year in advance, I do hereby agree to extend the terms and conditions of this within lease from June 10, 1893, to June 10, 1894, and from year to year so long as the $150 shall be paid, and when well is drilled to draw $150.

"John A. Taylor.

"Witness: J. C. Noble.
"April 5, 1893.
"No. 194.                                   "100 acres."

Said exhibits were not filed for record and were not recorded.

On the thirty-first day of March, 1894, said John A. Taylor conveyed by warranty deed to said John J. Ullery the said forty-acre tract making the following exception to his warranty: "Except against gas lease and pipe line privileges granted to The Northwestern Ohio Natural Gas Co."

On the same day said John A. Taylor conveyed by warranty deed to one Alvin L. Shoop the said sixty-acre tract, making the following exception to his warranty: "Except against gas lease held by The Northwestern Ohio Natural Gas Co., including all pipe line right of way."

On May 24, 1894, the gas company paid to Ullery and Shoop the sum of $150 rental from June 10, 1894, to June 10, 1895, and took a receipt signed by both, and each year thereafter tendered the rental to both, which was refused, as Mr. Shoop had disposed of his interest in the gas. Tender of four-tenths of the rental was also made to Mr. Ullery and refused by him. The gas company admits that it owes Mr. Ullery $240 of rental.

On or about June 10, 1895, the gas company drilled a well on said forty-acre tract, which has ever since produced gas in sufficient quantities to require the payment of a rental of $150 per year for

that well as provided at the end of the extension of date of April 5, 1893.

In the month of April, 1895, Mr. Shoop made and delivered a gas lease of his sixty-acre tract to the city of Tiffin, and in a contest between that city and the plaintiff in error here, the city of Tiffin held the gas right. The case came to this court and is found in *Northwestern O. N. G. Co.* v. *Tiffin,* 59 Ohio St., 420, where the facts are fully stated, and it there appears that the gas company lost by reason of its failure to have said extensions recorded.

In the year 1899 Mr. Ullery began his action against the gas company for the recovery of the $150 rental from the tenth day of June, 1895, to the tenth day of June, 1898, with interest. After the answer had been filed the plaintiff below took an assignment from Mr. Shoop of his interest in the rental, and averred that fact in an amendment to his petition. An answer was filed in which many things contained in the petition are admitted and averments made as to other matters, but the foregoing facts are taken from the record and seem to be controlling.

Judgment was rendered by the court of common pleas in favor of Mr. Ullery for the full amount claimed, and this was affirmed by the circuit court. Proper exceptions were saved throughout. Thereupon a petition in error was filed in this court seeking to reverse the judgments of the courts below.

*Doyle & Lewis* and *Troup & Truesdale,* for plaintiff in error.

If the title of Taylor had failed, and his tenant was ejected from the sixty acres by a superior title, Taylor could not recover upon this lease the full rental for the one hundred acres after the tenant was dispossessed. Neither can his assignee of the forty acres, Ullery. The rule is that eviction from a part of the leased premises by a stranger, under a paramount title to the landlord, entitled the tenant to a proportionate reduction of the rent. Eviction by the landlord releases the tenant from rent while the eviction continues. Wood Land. and Ten., Sec. 481; *Crown Mfg. Co.* v. *Gay,* 9 Re., 420; 13 Bull., 188; Taylor Land. and Ten., Sec. 378.

The tenant's obligation to pay rent may be apportioned, for as rent is incident to the reversion, whenever that is severed, either by the act of the parties, or the act of the law, the rent will follow the reversion, and become payable to the assignees of the respective portions thereof. As between such assignees the appor-

tionment will be according to value. But in the absence of proof of value the apportionment will be according to quantities. Taylor Land. and Ten., Sec. 382; *Van Rensselaer* v. *Jones*, 2 Barb., 643; Taylor Land. and Ten., Sec. 383, *et seq.*, and Wood Land. and Ten., Sec. 472, *et seq.*

Now the rule of law is, that any expulsion of tenant or intentional disturbance by the landlord, or by any other person acting by his authority, or by virtue of a legal right vested in them in any manner, which so seriously disturbs the tenant's possession as to compel an abandonment of the premises by him, or which deprives him of their beneficial enjoyment, amounts to an eviction and the rent is suspended from that time. Wood's Land. and Ten., Sec. 477, *et seq.*, and the authorities cited; Taylor's Land. and Ten., Secs. 386, 380, 378, 379, and cases cited; *Foote* v. *Cincinnati*, 11 Ohio, 410.

The rule of law is well settled, namely, that where a tenant is evicted from a part of the premises, he is entitled to a proportionate reduction of the rent, if the eviction is by a stranger, under a title paramount to his landlord's, but where the eviction is by the landlord, then he is relieved from the payment of any rent while evicted. *Crown Mfg. Co.* v. *Gay*, 9 Re., 420; 13 Bull., 188.

It is also a recognized principle in *Hilliard* v. *Gas Coal Co.*, 41 Ohio St., 668, although held not to apply to the facts of that case. It was distinctly announced in *McAlpin* v. *Woodruff*, 11 Ohio St., 120, where it was held that the assignment of dower was a constructive eviction of the lessee to the extent of one-third of the demised premises, and one-third of the rent ceased. The following authorities directly support our contention: *Moffat* v. *Strong*, 9 Bos., 57; *Carter* v. *Burr*, 39 Barb., N. Y., 59; *Vaughan* v. *Blanchard*, 1 Yeates, 175; *Hegeman* v. *McArthur*, 1 E. D. S., 147; *Smith* v. *Malings*, Cro. Jac., 160; *Stevenson* v. *Lombard*, 2 East, 575; *Flitchburg* v. *Melvin*, 15 Mass., 268; *Boodle* v. *Campbell*, 7 M. & G., 386; *Bauders* v. *Fletcher*, 11 Serg. & Rawle, 419; *Mayor* v. *White*, 15 M. & W., 571; *Lansing* v. *Van Alstyne*, 2 Wend., 561; *Smith* v. *Shepard*, 15 Pick., 147; *Seabrook* v. *Myers*, (Pa.), cited Wood L. & T., 1117; *Gillespie* v. *Thomas*, 15 Wend., 464; *Kingsland* v. *Clark*, 24 Mo., 24; *Wiggin* v. *N. Y.*, 9 Pai. Ch., 16; *David* v. *Beelman*, 5 La. Ann., 545; Taylor Land. and Ten., Secs. 379, 385; *Hunt* v. *Cope*, Cou., 242.

We want to impress on the court's attention that this is an action on the lease, and the covenant therein to pay rent. It is not an action for the value of the gas, not an action for damages, not an action for specific performance, or on the *quantum meruit,* but on the covenants in this lease to pay rent for the rights conferred in this one hundred acres, and that to sustain the plaintiff's action the court must find *in that covenant* an obligation to *pay* him, the assignee of the reversion in forty acres out of the one hundred acres, the rent which the lessor covenanted to pay for the one hundred acres, sixty acres of which passed by assignment to other parties who evicted the tenant therefrom.

In conclusion we desire to call especial attention to the oil and gas lease case of *Wettengel* v. *Gormley,* 160 Pa. St., 559.

*E. D. Bloom* and *D. R. Jones,* for defendant in error.

These instruments granting to a party oil and gas rights are commonly called leases, and in some respects they bear certain analogies to ordinary leases of land for agricultural or other purpose connected with the surface, but in other respects they are so different from common acreage leases that the court in construing them is governed by different rules than those in the law of landlord and tenant.

Some of the courts characterize these grants for oil and gas purposes a mere license, others as a license coupled with an interest; some as a grant of an incorporeal hereditament, similar to a conveyance of minerals in place. This latter view seems the more logical one and appears to have been generally followed by the courts. Law of Mines and Mining, 75, *et seq.; Brick Co.* v. *Pond,* 38 Ohio St., 65; *Petroleum Co.* v. *Petroleum Co.,* 72 Pa. St., 173; *Funk* v. *Haldeman,* 53 Pa. St., 229; *Brown* v. *Beecher,* 120 Pa. St., 590; *Lawson* v. *Kirchner,* 40 S. E. Rep., 344; *Kitchen* v. *Smith,* 101 Pa. St., 452; *Ohio Oil Co.* v. *Railway Co.,* 2 Circ. Dec., 505; 4 C. C. R., 210; *Herrington* v. *Wood,* 3 Circ. Dec., 475; 6 C. C. R., 326; *Meridian Nat. Bank* v. *McConica,* 4 Circ. Dec., 106; 8 C. C. R., 442.

However regarded, to treat such instruments as simple leases, governed by the ordinary and familiar law of landlord and tenant, would in the majority of cases work great injustice and lead to absurd conclusions. In these instruments the royalty or benefits given or paid to the so-called lessor are usually termed "rents," but

a reasonable interpretation of most of these contracts will enable the court to decide that they are not "rents," strictly speaking. Law of Mines and Mining, 117-118.

It is a fundamental principle of law that in interpreting every contract the court will look to the objects sought to be obtained and endeavor to carry out the intention of the parties as it appears from the contract. *Chamberlain* v. *Railway Co.*, 15 Ohio St., 225; *Railway Co.* v. *Railway Co.*, 44 Ohio St., 228; 2 Kent, original paging 555 and 567; *Nash* v. *Towne*, 72 U. S. (5 Wall.), 689; *Crislip* v. *Cain*, 19 W. Va., 438.

Each purchaser from Taylor took the entire fee of the land purchased by him subject to the lease. Oil and gas while in the ground are a part of the fee and belong to the realty. From the nature of these minerals our courts at the present time in dealing with questions arising upon an oil and gas lease, apply the rules of law which are recognized in cases involving the fixed minerals, such as coal, copper, iron, etc. In regard to these, whoever owns or buys the land, owns or buys the minerals thereon and in like manner the courts have declared that oil and gas belong to him who first lawfully brings them to the surface. If brought from wells on A's land, they are nevertheless his, though drawn from under his neighbor B's land. *Stoughton* v. *Appeal*, 88 Pa. St., 198; *South Penn. Oil Co.* v. *McIntyre*, 28 S. E. Rep., 922; *Kelley* v. *Ohio Oil Co.*, 57 Ohio St., 317; Law of Mines and Mining, 30; also page 4, citing *Adam* v. *Iron Co.*, 7 Cus., 361; *Lacustrine Fertilizer Co.* v. *Fertilizer Co.*, 82 N. Y., 476; *Stratton* v. *Lyons*, 53 Vt., 641; *Caldwell* v. *Fulton*, 31 Pa. St., 475; *Pa. Salt Mfg. Co.* v. *Neel*, 54 Pa. St., 66; *Hartwell* v. *Cammon*, 10 N. J. Eq., 128; Bryan's Law of Pet. and Nat. Gas, 20-32.

In Washburne's Real Property, Vol. 1, original paging 342, this principle is set forth: "But an expulsion from a part of the premises will not affect the tenant's liability under any other covenants in his lease than for the payment of rent," as, for instance the "covenant to repair," citing *Morrison* v. *Chadwick*, 7 C. B., 283; *La Farge* v. *Mansfield*, 31 Barb., 345.

The case of *Tiley* v. *Moyers*, 43 Pa. St., 404, lays down the rule which we think applicable to this case.

In answer to the argument of plaintiff in error, it is not conceded that lessees are required to drill but one well on the premises. On the contrary there is an implied agreement that they shall drill a

sufficient number of wells to extract the oil and gas from under said premises and properly protect lines, and with the completion of each paying gas well, it is clear·from the terms of the contract the annual payments to lessor will be increased. *Harris v. Ohio Oil Co.,* 57 Ohio St., 118.

There is no reason for an apportionment of this well rental according to the acreage held by Shoop and Ullery, for the reason that the court is not authorized to take judicial notice of the oil or gas in the ground and to say the gas drawn from the entire tract would be taken from each of the parties in proportion to the number of acres each held. As a matter of fact and common knowledge, we know that the gas might be taken from Ullery's land without affecting the supply under the sixty (60) acres in the least. It might be drawn from some underground reservoir miles away and in opposite direction. In general, the court is not authorized to take judicial notice of the existence of oil or gas until it becomes visible, tangible or "odorous," and then it would seem to belong to him on whose land it is found. The court may, however, take notice of gas or oil in the ground, when in proximity to other producing wells and thus uphold a rule requiring that lines be protected.

Burket, C. J.; Spear, Shauck, Price and Crew, JJ., concur.

It will be noticed that the extension of April 5, 1893, requires the rental of $150 to be paid each year in advance, and this must prevail over the averment in the answer that it is not required to be paid in advance. Whether the rental was tendered in advance each year and refused is not clear from the record, but it will be here regarded as having been so tendered and refused.

The plaintiff in error claims that it was entitled to judgment in its favor except as to the $240 upon the conceded facts found in the pleadings, and which are stated above so far as controlling or material, its claim being that the gas lease entered into by Mr. Taylor was an entirety and indivisible, that the rental of $150 was for the whole one hundred acres, that it was evicted from the sixty acres by the lease of Mr. Shoop to the city of Tiffin, and that in no event can Mr. Ullery, the owner of the forty acres upon which the gas well is situated, recover more than his proportionate share of the yearly rental, $60, out of the $150.

While the lease does not expressly state that the lands may be subdivided, such subdivision seems to be implied, because it is made

to extend to heirs, executors and assigns. There might be many heirs and many assigns. In this case there are two assigns, and it would seem that each would be entitled to his separate and individual interest in the oil or gas produced on his part of the land. But whether each is so entitled does not depend so much upon the word *assigns,* as upon the principle of entirety and divisibility in such cases.

We fully concur in the doctrine of the apportionment of rents so ably argued by counsel for plaintiff in error, but that doctrine does not dispose of the question as to whether the lands may be subdivided nor of the question as to the payment of the rental for each gas well.

In any view that may be taken of this case, the question comes back to the point as to whether the lease is entire and the lands and rental of gas wells indivisible, in short, whether the principle of *Wettengel* v. *Gormley,* 160 Pa. St., 559, is applicable, and if so, whether it shall be followed or not. In that case, the court held as follows:

"Whether three tracts of land, all subject to the same oil and gas lease, are devised respectively to the owner's three children, the royalties accruing under the lease are divisible among the three devisees, although all of the wells are sunk on only one of the three tracts.

"Owing to the vagrant character of oil and gas, a lease of these substances partakes of the character of a lease for general tillage rather than that of a lease for mining or quarrying the solid minerals."

We have several times had occasion to carefully examine and consider that case and it has always failed to receive the approval of our judgment; and upon a reconsideration here, it again fails to convince us of its soundness. And the reconsideration of the same principle in the same case in *Wettengel* v. *Gormley,* 184 Pa. St., 354, fails to strengthen the original case. Those cases were between devisees, and the question as between the lessee and purchasers from the lessor was not involved, and therefore the principle of those cases is not directly applicable here. But even if it were we do not regard it sound.

Oil in the rock adheres to the real estate, and is a part thereof until brought to the surface, when it becomes personalty, just as

a tree, or stone, coal or fire clay is a part of the realty until severed, when it becomes personalty.

That which is a part of the land before severance belongs to the owner of the land after severance as well as before. The fact that oil and gas are vagrant and transitory in their nature does not prevent them from adhering to and becoming part of the land while passing from one tract to another, and while so in one tract they are a part of that tract and belong to the owner thereof until they escape from such tract, and if brought to the surface before such escape, they become personal property belonging to the owner of the land.

It, therefore, irresistibly follows that the oil or gas taken from a well on a particular tract of land belongs to the owner of that tract even though the contract under which the well was drilled included other tracts of land. Because the contract of production may have included two or more tracts of land, such contract can not have the force of taking from the owner of one tract the oil or gas adhering to such tract for the time being, and bestowing it upon the owner of another tract where it may never have been. As oil and gas are migratory in character no one can tell from whence they came, or whither they are going, and they must, therefore, belong to him upon whose lands they are captured. No one else can have any ownership in them, and a man can be awarded only that which he owns. *Kelley* v. *Ohio Oil Co.*, 57 Ohio St., 317. In that case this court said, on page 328:

"Petroleum oil is a mineral, and while in the earth, it is part of the realty, and should it move from place to place by percolation or otherwise, it forms part of that tract of land in which it tarries for the time being, and if it moves to the next adjoining tract, it becomes part and parcel of that tract; and it forms part of some tract, until it reaches a well and is raised to the surface, and then, for the first time, it becomes the subject of distinct ownership separate from the realty, and becomes personal property, the property of the person into whose well it came. And this is so whether the oil moves, percolates, or exists in pools or deposits. In either event, it is property of and belongs to the person who reaches it by means of a well, and severs it from the realty and converts it into personalty."

The same rule applies to all property. Crops grown upon lands belong to the owner of the land, even though they may have been planted under a contract covering two or more tracts, unless the contract expressly provides otherwise.

But it is urged that the lessee having contracted to deal with but one man, can not be compelled to deal severally with many; and that his rights in this regard must be respected. True he contracted with one only as to two separate tracts of land, but·in the lease he agreed that his contract should extend to heirs and assigns, and as there may be many of these, it is more convenient for him to deal with the owners of the land severally than jointly with all the owners of both tracts. The words heirs and assigns in such cases mean the heirs and assigns as to each tract separately, rather than the heirs and assigns as to both jointly. This is for the benefit of both parties, and enables the lessee to sell the lease as to one tract and retain it as to the other, or to sell both to different parties.

While it is true that up to the time a well was completed the $150 rental was for both tracts, the last evtension expressly provides that: "When well is drilled to draw $150." It may be that the payment of the rental of $150 for this one well would have had the effect to hold the lease on both tracts as between the original parties, or as to third parties in case the extension had been recorded; but be that as it may, it is clear that the owner of the forty-acre tract upon which the well is situated is entitled under this last extension, to the rental of $150 each year for that well, and that, therefore, the judgments of the courts below are right, and are therefore

*Affirmed.*